First case, please. Case number 09-3559, Asset Acceptance, LLC v. Terrell All right. Counsel for the appellant, step forward and introduce yourself. Let's address first the letter that we received this morning, or yesterday. It wasn't in the form of a motion. We can certainly treat it as a motion and then rule on it, but given the late notification of the other side, and I personally haven't read the Louisiana case, so I'd ask you not to rely on it. And unless you can reach, if he has no objection, we'll treat it as a motion and then we'll enter an order accordingly. But it's off-balance for the oral argument. Okay. Thank you. Great. May it please the Court. I'm Ted Worthwine. I represent Terrence Tyler. There was no MBNA-Tyler agreement to arbitrate filed with the record. True? That's true, Your Honor. That was filed and attached, well, it was attached to the supplemental brief of July 6, 2009. That brief has no affidavit, and let me come back to that in just a second. When the complaint was filed on April 26, 2007, it had attached to it a copy of the NAF Award, the National Arbitration Forums Award, and a hearsay affidavit from Tina Sanchez, an employee of ASSET, which basically said this amount of money was owed. There is no agreement between MBNA and Tyler of any sort attached to the complaint. Well, but there's no dispute that Mr. Tyler had a credit card account with MBNA. Mr. Tyler denies that in his speech. Did he? Okay. So, yes, that is disputed. There is, you know, in the record, there's nothing whatsoever that indicates that ASSET was the, was a purchaser from MBNA or as we, MBNA was merged into Bank of America in 2005, two years before all of this occurred, and so that was a merger, and there's no, there's no indication that there's any purchase from Bank of America either. I have to say that there, it's a bit sensitive to make the claim that Mr. Tyler has absolutely no connection at all with either MBNA or ASSET as the buyer of a debt owed by Mr. Tyler. It puts a little strain on. Let me take that. I believe there's two parts to that. One is that there's a purchase by ASSET. There's no evidence whatsoever that that's so. The second is whether or not Mr. Tyler has a credit card and uses a credit card with MBNA. He denies it, but for the purposes of this argument, it doesn't really matter whether or not he has a credit card or not. Aren't there bills, though, in the record, monthly bills issued from MBNA to Mr. Tyler? There are. Monthly statements? There are statements which come pursuant to a subpoena that ASSET acceptance issues. It's stamped May the 9th of 2008. That subpoena is never filed with the clerk. We never receive a copy of that subpoena. It's supposed to be filed with the clerk pursuant to Supreme Court Rule 204, but it's not. Nevertheless, the documents show up because we find out about them because Bank of America sends Mr. Tyler a document which says, golly, we've got this subpoena from ASSET. As part of that, what they send back are some, not very many… Well, let me ask you this. If he didn't have an account, would you agree that that would be something that he would have to challenge within three months or not? No. Why? Because we're arguing that there's no contract. And if there's no contract, then according to the FAA and according to the cases which support the FAA, he can come in and he can challenge that at any time. That's not a Section 10 argument. That's an argument that's been held to come up under Section 13. When you say there's no contract, do you literally mean no contract, or do you mean that there's no arbitration contract between the parties? There's no contract that compels arbitration between the parties? For our purposes, the important part is there's no contract that compels arbitration. But overall, there is no contract. There is no evidence in the record that there is any contract whatsoever. When we look at the materials attached to the July 6, 2000… Let me ask you, you have a variety of issues raised in your brief, but this is the possibly dispositive issue. This is the issue. And so the question I have is what happens to your other issues if we were to agree with that first issue and remand it? Do we need to address the counterclaims and all those other issues that you raise in your brief? I don't believe we need to address any of the other issues, Your Honor. I believe that the way the state of the record is, if Your Honor, if… So we don't have to address the Section 4 arbitration? Not if we come to this issue and come to a resolution of this issue. And with respect to the counterclaim, when it comes back down, we can re-raise, I believe we can re-open that issue. If we were going to decide against this, then I would spend time arguing that issue. Well, we haven't decided yet, but why don't you reserve the portion of your time? I believe that we've handled the counterclaim issue fairly well in the brief. I'll be certainly willing to discuss it with the Justices if you would like, but I don't think so. When we look at that agreement, that agreement that was attached with Anani Affidavit, remember there's nothing from MBNA or Bank of America's Keeper of the Records. There's nothing that says this is from the files. There's nothing that says it's kept in the ordinary course of business by MBNA or Bank of America or whoever does their work for them. There's nothing that says that this was sent to Mr. Tyler at any time or that this was sent as part of a mass mailing to all of their clients, anything that would qualify this as a business records exception. What it is is a faxed generic copy of some agreement. There's no reason for us to think that this is Tyler's. And when we look at the 12 pages of additional terms and conditions, we see that pages one and two, which are together, and then pages three and four have down at the very bottom of them a faxed transmission stamp across it. And it says that they were faxed June the 3rd of 2002. And as Justice McBride pointed out, we do have a number of documents which are in front of us, whether they're in the record or not, they're in front of us, of statements that came in pursuant to the subpoena. And those show that Tyler was in good standing in 2002 and throughout 2002 as a matter of fact, there's one from January of 2003. That's the problem when you start now quoting the record to show that he's in good standing when earlier you said nothing existed between the parties. I'm merely saying that his statement about that doesn't matter, Your Honor. It doesn't matter whether or not he was in good standing. Why don't you reserve the balance of your time? That's fine. We'll do that. Thank you. Thank you. Thank you. Good morning, Your Honors. My name is Steve Swofford on behalf of Asset Acceptance. I guess our position is somewhat straightforward. Asset got an arbitration award based on a credit card debt, which, by the way, in the answer to the complaint, Tyler admits he had a discount with NPA. And he admits that he owed a debt as well in his reply brief. I want to commend you as well on the succinctness of your brief. I think that was well done. Let me go to a couple portions of it, though, because you do say all the arguments that Tyler now raises are barred by the arbitration award. I think that goes to Justice McBride's question. Why would the nonexistence of a binding arbitration clause or contract be an issue that has to be raised at the arbitration award, at the arbitration proceeding? Well, that does go to the heart of the issue in our position. And that is that the arbitration award specifically finds the agreement existed. Tyler had an opportunity to contest that. Well, you know, it's somewhat of a bootstrap for the arbitration. I mean, I don't mean to be demeaning, but you wouldn't be there unless they thought you had an arbitration clause. And they're not there to really question whether that arbitration clause is binding on the parties. They simply want to show us that arbitration clause and we'll go forward. So when you say they found a binding arbitration clause, it's somewhat less than a complete statement. Do you understand what I mean? I understand what you say by bootstrap. I mean, they did specifically find that it existed. Did they, let's say, put it in the record? And did they have a document with both your client, MBNA, the former party, and the credit card holder? I don't know if it's in the record, the arbitration or not, because all we presented was the arbitration award. Let's go to the basic issue. Can the question of the existence of such an arbitration clause be an issue for the circuit court to address and not be bound by whatever statement is in the arbitration record? Well, it's our position that you cannot contest that after the three months in the Federal Arbitration Act. And that's supported by Seventh Circuit law. But we're not bound by that. I understand that. I'm just not going to have the best. Well, let me interrupt you. Forgetting this other case that was cited, there was authority out there, there is authority out there, that basically says that if you don't have an agreement to arbitrate, then you shouldn't have to arbitrate. That's kind of always been out there, hasn't it? If you don't have a contract to arbitrate. So I don't know. It seems to me kind of basic that if there really was never an arbitration agreement, then there's no obligation to even go before any arbitrators. Well, this is something that you should have raised at an earlier date. Let's assume for purposes of the argument, not this case, but there's no arbitration agreement whatsoever, but someone gets involved and ends up before the arbitration and an award is entered. But, in fact, they do not have. There was never an agreement to arbitrate. Well, according to Riddell, which is, of course, not binding on this part, had Mr. Tyler gone to the arbitrator and said there's no agreement here, the arbitrator would have referred the matter to the court. He could not have determined it. Let me ask you about that Seventh Circuit, Riddell, because having read it, I see it as a case involving a dispute whether the arbitration clause that existed should be binding on the parties. So it's not a question of the nonexistence. It's a question of whether it should bind them. Even if there is a plausible argument to be made that it didn't exist, that was pretty much rejected by the Seventh Circuit because it's right there for everyone to look at. So it's not this sort of case. Well, somewhere in this opinion, it does say that the Riddells denied that they entered into this agreement, and I can't put my finger on it this quickly. There's no question that they deny it, but it's like denying your signature. Well, I'd also like to just make sure the court doesn't look over the fact that there are Illinois cases interpreted in the Uniform Arbitration Act that held the same way as I'm arguing. I know it's a different act, but I mean, you've got your 90 days or you've got your three months. Are the facts the same in those cases where they actually question the existence of a binding arbitration clause? And there's no dispute that there is something in the record, but there's nothing in the record that connects that clause that's in the record with the contract between MBNA and Mr. Tyler. And I think that's their position. Their position is it wasn't supported by any kind of affidavit. Let me bring up a modern-day example of the sort of problems that might arise. You take a look at the mortgage forfeiture cases where there are these documents that are being presented, and it wasn't until someone decided to challenge those documents that the underlying basis for those documents was revealed to be faulty. And so when you're relying on a contract between the parties, their claim is that a prima facie case must include a binding arbitration clause between the parties. And if you can't present that, you haven't made out a prima facie case. And I think we recognize that you're not out of luck here. You're not going to walk away with nothing, I think. I don't know for sure. But, I mean, you could still go to court. You still have that fallback position of going to court and proving up your case. You just can't do it in the context of an arbitration proceeding when there is no binding arbitration clause. At least that's their position. Did BestCoin App actually have a situation identical to this? You know, I read that last night. I'm not going to state an identical situation. What about Mid-America? You're testing my preparation. Even less so Mid-America. Pardon? Even less so Mid-America. So, you know, they do stand in opposition. I stated, though, that you don't have to submit the – that you're bound if you don't do it within 90 days. There are three months here. Can I just say one thing, though? Sure. I'm sorry. You know, there's a purpose for arbitration. It's meant to be a simple procedure, a way to resolve things. Mr. Tyler had every opportunity in the world. And to ignore this award is sort of to undermine the entire purpose of arbitration, which may not be stated in my brief, but I think that's a really important point. Okay. But the retort is that it would have been a very simple thing to do, to present a document showing that the arbitration clause exists between the parties. And here's what I envisioned. Asset buys the debt from MBNA, and Asset says, well, do you have all these conditions satisfied so that we can have a good prospect of collecting and show us which way we can go? If we can go through arbitration, we will. If we have to go through the circuit court, we will. And they say, we have this arbitration clause. And Asset can say, you know, where are the signatures on this arbitration clause? And MBNA will say, well, we don't have that, but we'll reduce the price that we give you for this, or we'll reduce the price that we're asking for this account. And to some extent, there's risk-taking involved here. And the question is whether that risk was a good risk. And that's the problem. Because it doesn't take a whole lot for you to prove up a prima facie case. If that document is what is required, then that document should be presented. In the document that you did present, it looks like it's pretty much a form document. Was there ever a challenge that somehow there was fraud involved here? Was that ever suggested? I mean, that would be one way of perhaps attacking the document. But that really wasn't? No, that was never argued. The argument was always that basically what Judge Garcia is saying is that we didn't prove the contract. There was never any suggestion of any fraud, corruption, or anything else in this case. Of course, there would never be any signatures that we'd ever get. I'm sure you all have charge cards. But pretty much, if you have all these statements like you have in the record showing you've got the card, you accept the terms of the contract. But there are times when that contract can change every time you use the card. And they say, if you use the card after this date, it will be under this new contract. And the question is, when did those conditions arise? Did it arise before he used the card, the second time he used the card, the tenth time he used the card? If we don't know when that condition arise, why should we give you the benefit of the doubt when you have the documents to prove conclusively when that date, when that condition was proposed? We put the agreement in, and there was no protest to the arbitration whatsoever when he was given notice other than, I don't know that much money, and I'm going to ignore everything you say until you agree with me that I don't know that much money. You started your argument with, you're putting the best argument forward. And, of course... I don't know that I said the best, but I said the central one. Yeah, the central one. But that sort of explains why we're in this position now. Because when the arbitration proceeding began, he didn't have an attorney. He has an attorney now. And that attorney is bound to look for the weakness in the plaintiff's case and assert that weakness to the best of his ability. And that's the situation that we're in now. In response to that demand for arbitration, he wrote the letter saying what I said before about, I know I owe a debt, but not that much. And what's the last line of that letter says? If you don't agree with me, I'm going to get an attorney. Well, why do we wait so long, and what's the purpose of the three-month limit on an attorney? Well, the letter admits owing a debt. The letter, though, doesn't shed any light on whether he was ever a party to an arbitration agreement. Wouldn't you agree with that? That letter does. I don't see how that letter flushes out any notion that there was an arbitration agreement in place. That letter says, yes, I owe you money, but not as much as you claim. But it doesn't really get to the question of whether there was an arbitration agreement. He doesn't protest it. And I have trouble accepting this idea now that he doesn't even have an agreement. Believe me. It's hard to accept any sincerity in a claim that you don't have a credit card agreement when all of these documents are in the record showing the bill is being sent out. So going to the letter, I don't see how that admits to any idea whether he knew there was an arbitration agreement at the time. Why didn't he protest it? I mean, that's not a question. That's a rhetorical question. Excuse me. I think Judge Garcia pointed out he was without an attorney at that time. I mean, whether it even crossed his mind about, did I have an arbitration agreement or did I not? I mean, he's just basically saying, I know I owe you money, but I don't owe you this much. But I don't see how we get past the general notion that if there is no actual arbitration agreement, that this is something that you give up in the 90 days if there wasn't one. You put forth something in the record to show that there was an arbitration agreement. That's a little different. But if there was never an agreement, how is there a binding contract to arbitrate so that you should be there in the first place? Haven't the cases said that if there wasn't an agreement, then the arbitrators have basically exceeded their powers and therefore any arbitration award is void? Actually, the cases say that. There are some cases that do say that. Pardon? There are some cases that do say that. There are cases that say that the arbitrator has the power to determine whether the contract exists in the first place. Yes. And there's recent cases on it. And there's other cases that say that the trial court has to confirm an award. It's the trial court's position to determine whether there was, in fact, an arbitration agreement in place. It really is the arbitrator's position in the first place to do this unless the ---- Let's say that that's all true, that the arbitrator can make that decision. But in order to determine whether the arbitrator's award was void or not void from your perspective, not void, I think you should be able to, and it goes back to the prima facie case, you should be able to present to the circuit court for confirmation of that award the documents that the arbitrator relied on to determine that a binding arbitration clause existed between the parties. That's like relitigating what it's ---- It's not relitigating. I mean, it's a simple document. It's not like it can be disputed. No one is contending it can be disputed. And, in fact, we're talking prima facie case. If he doesn't present any evidence to the contrary, then you win automatically. But in order for you to establish the validity of your arbitration award, there should be certain minimal requirements met. And it seems to me that that would be one of them. And going back to the forfeiture, I mean, going back to the mortgage forfeiture cases, I mean, a lot of them preceded until the problem came to light. So why don't we avoid that problem to begin with by simply saying this is what ---- You know, you seem to be disagreeing with my position, but I really do believe that you are, in effect, relitigating something that was litigated in front of the arbitrator and which Mr. Talley, every opportunity you can test it. If you say it was litigated in front of the arbitrator, then all you have to show is what did you present to the arbitrator. That's just relitigating the case. It wasn't the same evidence again and again. I mean, that's my position. How difficult is that? How difficult is that? All right. All right. Well, I understand your position. And as I said, I appreciate the directness of your brief, and I thank you for that because it makes our life a lot easier. But you can certainly wrap up. Thank you. I'd just like, of course, the judgment to be affirmed. All right. Thank you. Thank you. Very briefly. Counsel. Thank you. I just want to make it clear that I don't believe Mr. Tyler has ever denied that he had an MBNA credit card. With respect to this complaint itself, he has denied that that is, in fact, the specific credit card that he had and put it to their proof. But there's no denying that he says in his letter, hey, I've got an MBNA credit card, and I think there's something wrong. So I don't want to get myself into a position where I'm saying something that Mr. Tyler doesn't believe. Well, what about the arbitration award itself? The arbitrator did decide some of these issues. He said that the claim was properly served on the respondent in accordance with the rules. He concluded that the parties entered into a written agreement to arbitrate. He states a particular date. He says no party has asserted that the agreement is invalid or unenforceable. The matter is arbitrable under the terms of the party's agreement. I mean, these are generally things that we would not go into and that the trial court would not go into unless you allege some sort of fraud. Normally, I mean, there are the grounds that the court can consider, and they're laid out in numerous cases. So this arbitrator actually, according to his award, concluded these things. I have two responses to that. I wish I had three because you're supposed to do things in threes, but I have two. One is that if we look at MCI, the First Circuit Court of Appeals case, we see in MCI they specifically say, listen, we're not dealing with the Uniform Arbitration Act here. We're dealing with the Federal Arbitration Act, and there's a difference between them. And they specifically say that the respondent there, the defendant there, was absolutely right in what it did, which was sitting and doing nothing, because when it sat and did nothing and argued there was no agreement, and there was no agreement, at least there was no agreement that was ever proved, although MCI had a different view. There was no agreement that was ever proved. They could come in later and challenge it. It didn't matter whether three months had gone by or 90 days had gone by. You could come in and challenge it, whether you're going to prevail or not is another issue. That's right. But it wasn't one of those things that had to be brought within Section 10 of the Federal Arbitration Act, that whether the court had jurisdiction or not was a different issue. And so the MCI court specifically said, well, you know, you people or everybody who's in this situation should not go to arbitration, because if they go to arbitration and if they arbitrate, then the arbitrator makes a decision and you're stuck. And so you're a lot better off to sit back, depending on how you feel about arbitration versus the courts, and wait. Now, the second thing I have to say has to do with this is NAF, and the National Arbitration Forum, as we know, went out of business very suddenly when the Attorney General of the State of Minnesota went after them. They went out of business four days later, and they no longer do any consumer arbitration, nor does anybody else right now. The only study we've ever seen from the NAF that came out was in California, which studied 18,075 cases from January 1st of 2002 through March the 31st of 2007, and out of those, only 30 were decided in favor of the consumer. That's less than 2%. And that's all in your brief. You did point out that. The last thing I have to say, and then I'll sit down. This is a little story, but it's not too long, is there was something out there called the National Arbitration Council, and the National Arbitration Council just came out of somebody who hated debt collectors. He just formed this thing and would send off letters to various people, and especially debtors of Chase and debtors of Citicorp, and ultimately he had over 200 awards that came out against Citicorp and over 200 awards that came out against Chase, and he'd send off a notice after they filed their arbitration with him, and there they would be. And under the Uniform Arbitration Act, there were some problems with that because this was an arbitration. People had all received notice, and they didn't bring forth and go forth under Section 10. Now, the Montana Supreme Court, the case I believe is in our briefs, said, oh, no, this is the FAA and this is a fraud, and nothing doing whatsoever. We don't even have to look at the Uniform Arbitration Act, and ultimately a federal district court down in Florida enjoined this guy from his scam in 2006. Well, I would say in closing, there needs to be a contract. There is no contract to arbitrate, and we believe that asset has not met its burden. Thank you very much. All right, thank you. The case will be taken under advisement. We're going to take a five-minute break.